UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                    :
OUSMANE SAVANE,                                                     :
                                                                    :
                                        Petitioner,                 :
                                                                    :
                        -v-                                         :
                                                                    :
LADEON FRANCIS, *in his official capacity as Acting*               :
*Field Office Director of New York*, *et al.*,                     :
                                                                    :
                                        Respondents.                :
------------------------------------------------------------------ X

<table>
<tr><td>USDC SDNY</td></tr>
<tr><td>DOCUMENT</td></tr>
<tr><td>ELECTRONICALLY FILED</td></tr>
<tr><td>DOC #: _____</td></tr>
<tr><td>DATE FILED: 9/28/2025</td></tr>
</table>

1:25-cv-6666-GHW

MEMORANDUM OPINION &
ORDER

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

This is another case in a recent line of cases concerning the scope of the government's authority to detain noncitizens during the pendency of removal proceedings under two provisions of the Immigration and Nationality Act ("INA")—8 U.S.C. § 1225 ("§ 1225"), under which a noncitizen's detention is generally mandatory, and 8 U.S.C. § 1226 ("§ 1226"), under which detention is generally discretionary.

Petitioner Ousmane Savane entered the United States around December 2023 and was detained shortly thereafter by Immigration and Customs Enforcement ("ICE"). Because Respondents determined that Mr. Savane posed neither a flight risk nor a danger to the community, Respondents invoked § 1226 as the statutory authority to release Petitioner on his own recognizance. At the time of his initial release, Mr. Savane was ordered to appear in immigration court in Manhattan on a later date. Mr. Savane appeared before the immigration law judge as directed and was instructed to return to court on August 12, 2025.

On August 12, 2025, Mr. Savane attended what he believed to be a routine, scheduled immigration court appearance, expecting to return to his home in the Bronx. But that court appearance was not routine, and Mr. Savane never returned home. Instead, as he was exiting the

courtroom, Mr. Savane was surrounded by ICE agents, who, without offering any explanation, immediately detained him.

That same day, Mr. Savane filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting that his sudden re-detention violates his Fifth and Fourth Amendment rights and seeking his immediate release. Respondents argue that Mr. Savane's initial detention and release under § 1226 was a "mistake," and that Petitioner was, and is, properly subject to mandatory detention under § 1225. The principal question before the Court is whether Petitioner is detained under § 1225 or § 1226. The subsidiary question—depending upon which section authorizes Petitioner's detention—is, whether Petitioner's re-detention violated the Fifth Amendment's procedural and substantive due process requirements.

The Court need not resolve the threshold statutory interpretation question in this case. Assuming that Petitioner is properly subject to mandatory detention under § 1225 as Respondents contend, Respondents did not afford Mr. Savane any process before his re-detention—including the baseline procedural safeguards required by § 1225's implementing regulations themselves. Because the lack of any process here does not comport with the Fifth Amendment, regardless of which statutory provision authorizers Petitioner's detention, Mr. Savane's petition is GRANTED.

## II.     BACKGROUND[1]

### A.     Factual Background

Mr. Savane is a 22-year-old citizen of Guinea. Pet. ¶ 19. Mr. Savane entered[2] the United States around December 21, 2023 seeking asylum. *Id.* ¶ 20. Following his entrance into the United

---

[1] The Court makes the following findings of fact, which are undisputed unless otherwise noted. *See* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."); *see also Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 207 n.2 (S.D.N.Y. 2020). Some of the facts are drawn from Mr. Savane's first amended habeas corpus petition (the "Petition" or "Pet."), Dkt. No. 9, and from officer Jason Mascia's declaration in support of Respondents' opposition, Dkt. No. 12. Some of the facts are also drawn from oral argument held on September 19, 2025. *See* Tr. of Oral Argument ("Tr.").

[2] "Entered" here is used in its colloquial sense to refer to physical, as opposed to lawful, entrance. *See* 8 U.S.C. § 1101(a)(13)(A). Despite his physical presence in the United States, Mr. Savane has not lawfully entered the country.

States, Mr. Savane was detained by ICE in Tecate, California until January 18, 2024, when, invoking § 1226 as the applicable statutory authority, Respondents released him on his own recognizance.[3]  *Id.*  Also on January 18, 2024, Respondents issued Mr. Savane a Notice to Appear ("NTA"), requiring him to appear before the New York - Broadway Immigration Court on September 17, 2024.  *Id.* ¶ 21.  The NTA identified that Mr. Savane is "an alien present in the United States who had not been admitted or paroled."  Dkt. No. 9-2 at 1.  Mr. Savane was charged with removability under 8 U.S.C. § 1182(a)(6)(A)(i), a charge applicable to individuals who are "present in the United States without admission or parole."  Pet. ¶ 3.

Following his release under § 1226 and up until his sudden re-detention, Mr. Savane resided in the Bronx, New York.  *Id.* ¶ 19.  Mr. Savane has forged ties with his community in the Bronx.  Mr. Savane, a practicing Muslim, attended a mosque in New York.  *Id.* ¶¶ 22, 23.  He joined "African Communities Together," a community organization, and regularly attended the organization's events.  *Id.* ¶ 22.  Mr. Savane has also been going to school to learn English.  *Id.*  Mr. Savane does not have any criminal convictions in the United States, although he was once ticketed for fare hopping after he went through an open gate at the subway station near his home in the Bronx.  *Id.* ¶ 24.  The resulting case was dismissed.  *Id.*

On September 17, 2024, Mr. Savane appeared *pro se* before the immigration court in New York as directed.  Dkt. No. 12 ¶ 7.  The immigration judge adjourned Mr. Savane's hearing to August 12, 2025 to permit him to secure counsel.  *Id.*  Mr. Savane filed an asylum application on December 14, 2024.  Pet. ¶ 5.  Mr. Savane returned to the immigration court on August 12, 2025, and his case was set for a final hearing on his asylum application in April 2027.  *Id.* ¶¶ 6, 26.

Respondents did not let Mr. Savane return home to await his 2027 hearing.  Instead, as Mr. Savane was leaving the courtroom, he was surrounded by ICE agents, who after obtaining Mr.

---

[3] Tecate, California is a border town adjacent to Tecate, Mexico.

Savane's name, verified that he was included on their "list of people to arrest in court" and arrested him. *Id.* ¶¶ 26, 27. Mr. Savane was not given any prior notice or warning that he was going to be arrested following his court appearance. *Id.* ¶¶ 6, 26; Tr. at 8:10–9:12. Nor was Mr. Savane provided an explanation or the basis for his re-detention. Tr. at 8:18–19 (Assistant United States Attorney ("AUSA"): noting that there is no "documentation in the record" as to the statutory basis for Petitioner's re-detention and speculating that Petitioner was either "detained under 1225" or that Petitioner's parole was revoked "under 1226(b)"); Tr. at 9:5–12 (AUSA: "I think it's either on the basis of the initial warrant or there was a new warrant, but as I said, I don't have that information so I can't say."); Tr. 35:4–5 (AUSA: "I would think that it's under 1226(b).").

At the time of his arrest, Mr. Savane was accompanied by two volunteer attorneys, one of whom requested to see the judicial warrant justifying Mr. Savane's arrest. *Id.* ¶ 27. In response, one of the ICE officers showed the attorneys an unsigned administrative warrant. *Id.* That unsigned administrative warrant is not "part of the record" here, Tr. at 8:21–25, because Respondents concede that they "do not have access" to that warrant and have declined to make any statements "about what it says or doesn't say." Tr. at 8:24–25; Tr. 35:2–3 (AUSA: "I can only speak generally because I don't have the warrant."); Tr. 36:2–8 (AUSA: "I don't have the warrant and I don't have the facts about what happened . . . . There may be something else that was in the warrant, but because I don't have it, I'm relying on ICE's position.").

From the time of his re-detention on August 12, 2025 until the evening of August 13, 2025, Mr. Savane was held at 26 Federal Plaza, a federal building across the street from the immigration court. *Id.* at 7. For the duration of his detention at 26 Federal Plaza, Mr. Savane was not given any halal meals, nor was he provided a bed, bathing facilities, or a change of clothing. *Id.* ¶ 7. Mr. Savane alleges the conditions inside 26 Federal Plaza were inhumane. *Id.* ¶ 33. Mr. Savane was then moved to the Orange County Jail in Goshen, New York where he remains detained. *Id.* ¶ 9. Mr.

Savane alleges that Respondents arrested him as part of a nationwide campaign to arrest individuals who are attending their immigration court hearings without any individualized determinations as to whether those individuals pose any flight risk or danger to their communities.

**B.    Procedural History**

On August 12, 2025, Mr. Savane filed a petition for writ of habeas corpus.  Dkt. No. 1. Following the Court's August 15, 2025 scheduling order, Dkt. No. 7, Mr. Savane filed an amended petition.  *See* Pet.  Mr. Savane argues that his re-detention under § 1225(b)(2)(A) "contradicts decades of settled precedent" and the Department of Homeland Security's ("DHS") own long-standing interpretation that individuals present in the United States without inspection are governed by § 1226(a).  *Id.* ¶ 43.  Mr. Savane contends that his re-detention, without any notice or other procedural safeguards, violates his substantive and procedural due process rights under the Fifth Amendment and that his arrest was unlawful under the Fourth Amendment.  *Id.* ¶¶ 57, 63, 66.

Respondents filed their opposition on August 25, 2025, in which they argue that Petitioner is lawfully detained pursuant to § 1225(b)(2)(A) and that because his detention is therefore mandatory, he is not entitled to a bond hearing and the only due process required is that which Congress has authorized.  Dkt. No. 11 ("Opp'n") at 4–13.  Petitioner replied on August 28, 2025, arguing that Respondents' statutory interpretation is untenable at best because it is unsupported by both the plain text and structure of the statute and decades of established judicial and agency precedent.  Dkt. No. 15 ("Reply") at 1.

On September 19, 2025, the Court held oral argument on Mr. Savane's petition in connection to the applicability of §§ 1225 and 1226 to Petitioner's initial detention and subsequent re-detention, and with respect to the factual determinations underlying both.  *See* Tr.  Paige Austin, Make the Road New York, appeared on behalf of Mr. Savane.  And Rebecca L. Salk, Assistant United States Attorney, appeared on behalf of Respondents.

During oral argument, Respondents clarified that "ICE's position is that" Petitioner is subject to mandatory detention under § 1225(b)(2)(A) because "when Petitioner first entered the country, he was an applicant for admission pursuant to 8 U.S.C § 1225," and that—notwithstanding Petitioner's initial release on his own recognizance under § 1226(a)(2)(B)—Petitioner remains an "applicant for admission" who is "seeking admission" to the United States. Tr. at 4:25–5:5. Petitioner remains an "applicant for admission," as defined by § 1225(a)(1), because the phrase "applicant for admission" is not a discretionary designation, but instead refers to a noncitizen's legal "status." Tr. at 7:14–15. And "once someone is [deemed] an applicant for admission" they retain that status "until they are deemed to have lawfully entered." Tr. at 7:16–18. Respondents argue that because Petitioner is properly deemed an "applicant for admission," it was a "mistake that he was [initially] released under 1226 and he should have been released under a different provision"— namely 8 U.S.C. § 1182(d)(5)(A) ("§ 1182(d)(5)(A)"). Tr. at 7:24–8:2.

### III.    LEGAL STANDARD[4]

Mr. Savane brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241. Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18 CIV. 4189 (RWS), 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). "Jurisdiction over 28 U.S.C. § 2241 habeas petitions is

---

[4] Because neither party argues that the Court lacks jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii) to review a challenge to the revocation of Petitioner's parole, the Court does not address this limitation on its jurisdictional authority. § 1252(a)(2)(B)(ii) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the[ir] discretion."). Regardless, as the Second Circuit has held, even when "a statute strips jurisdiction over a substantive discretionary decision, [it] does not strip jurisdiction over procedural challenges." *Mantena v. Johnson*, 809 F.3d 721, 728 (2d Cir. 2015).

properly limited to purely legal statutory and constitutional claims and does not extend to review of discretionary determinations by immigration judges." *Id.* (quotation and brackets omitted). The Court must "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## IV.    DISCUSSION

### A.    Statutory and Regulatory Background

Under 8 U.S.C. § 1225(a)(1), a noncitizen "present in the United States who has not been admitted[5] or who arrives in the United States" is "deemed" "an applicant for admission." Section 1225(b)(2)(A) provides that "[i]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." As Justice Kavanaugh explained in *Biden v. Texas*, if DHS declines to detain an "applicant for admission" under § 1225(b)(2)(A), the statute permits only two alternatives to such detention—

> Option one: DHS may in its discretion grant noncitizens parole[6] into the United States if parole provides a "significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Parole entails releasing individuals on a case-by-case basis into the United States subject to "reasonable assurances" that they "will appear at all hearings." 8 C.F.R. § 212.5(d) (2020); see 8 U.S.C. § 1182(d)(5)(A). Notably, every Administration beginning in the late 1990s has relied heavily on the parole option, including the administrations of Presidents Clinton, Bush, Obama, Trump, and Biden.
>
> Option two: DHS may choose to return noncitizens to Mexico. 8 U.S.C. § 1225(b)(2)(C).

*Biden v. Texas*, 597 U.S. 785, 814–15 (2022) (Kavanaugh, J., concurring) (citation modified).

---

[5] The term "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). As the Court in *Martinez* acknowledged, this provision "arguably defin[es] 'applicant' as a status." *Martinez v. Hyde*, No. 25-11613, 2025 WL 2084238, at *6 n.13 (D. Mass. July 24, 2025). Indeed, this provision does not define "admission" by reference to physical entry into the United States.

[6] Section 1182(d)(5)(A) further provides that such discretionary parole "shall not be regarded as an admission of the alien."

The Secretary of Homeland Security has discretion to terminate 8 U.S.C. § 1182(d)(5)(A) parole when "in [her] opinion," "the purposes of such parole . . . have been served." "[T]hereafter[,]" the formerly-paroled noncitizen "shall forthwith return or be returned to the custody from which he was paroled" and the noncitizen's "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

As the Supreme Court has explained, "U.S. Immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018). The INA "also authorizes the Government to detain certain aliens already in the country" under 8 U.S.C. § 1226. *Id.* Section 1226 establishes a discretionary detention[7] framework. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." "Pending such decision," the Attorney General "(1) may continue to detain the arrested alien"; (2) "may release" the alien on bond; or (3) may release the alien on "conditional parole." §§ 1226(a)(1)– (2). The Attorney General "at any time may revoke a bond or parole" under § 1226(a) and "rearrest the alien under the original warrant, and detain the alien." § 1226(b).

For decades, "DHS's longstanding interpretation" has been that § 1226, and not § 1225, "applies to aliens who have crossed the border between ports of entry and are shortly thereafter apprehended." *Biden v. Texas*, 597 U.S. 785 (No. 21-954), Tr. of Oral Argument 44:24–45:2; 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (Solicitor General of the United States: "Despite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for

---

[7] There are exceptions to § 1226's discretionary framework under which a noncitizen's detention is mandatory that are not implicated here. §§ 1226(c), (e) (mandating detention of certain categories of criminal aliens).

bond and bond redetermination.").[8]

Respondents recently "revisited [their] legal position on detention and release authorities" under § 1225 and § 1226.[9]  *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited Sept. 23, 2025) [hereinafter the "Lyons Memo"].  On July 8, 2025, Todd Lyons, Acting Director of United States Immigration and Customs Enforcement, issued an internal memorandum explaining that "DHS has determined that [§ 1225] of the [INA], rather than [§ 1226], is the applicable immigration detention authority for all applicants for admission."  *Id.*  The Lyons Memo identifies Respondents' current position:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival.  **Effective immediately, it the position of DHS that such aliens are subject to detention under [§ 1225(b)(2)(A)] and may not be released from**

---

[8] Petitioner relies on the introductory text to the regulation to support his argument that Respondents previously treated noncitizens who physically entered the United States as subject to § 1226, not § 1225.  *See* Reply at 5 (quoting 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination.").  The language Petitioner quotes from 62 Fed. Reg. 10312 does not appear in the regulatory text itself, only the introductory text which, does not identify § 1226 as the authority for the statement.  And there are no implementing regulations that the Court could identify based on the language Petitioner cites that permit noncitizens subject to § 1225 to be eligible for bond or bond redetermination.  In fact, the applicable implementing regulations expressly preclude bond for noncitizens subject to § 1225—noncitizens subject to § 1226, but not those subject to § 1225, are eligible for bond and bond redetermination.  8 C.F.R. § 1003.19(h)(2)(i)(B); *Mendez Ramirez*, 612 F. Supp. 3d at 205 ("If an arriving alien is subject to mandatory detention under Section 1225(b), 'an immigration judge "may not" conduct a bond hearing to determine whether an arriving alien should be released into the United States during removal proceedings.'" (quoting *Lopez*, 2018 WL 2932726, at *4)).  The regulation that allows for release of noncitizens subject to § 1225 is expressly predicated on the Government's parole authority under § 1182.  *See* 8 C.F.R. 212.5(e)(2)(i).

[9] As *Martinez* explained—

> The existence of the memorandum was first reported by the Washington Post on July 14, 2025. Maria Sacchetti & Carol D. Leonnig, *ICE declares millions of undocumented immigrants ineligible for bond hearings*, Washington Post (July 14, 2025), https://www.washingtonpost.com/immigration/2025/07/14/ice-trump-undocumented-immigrants-bond-hearings/ [https://perma.cc/LN4F-FJDG].  The memorandum itself was subsequently leaked by legal advocacy groups.  *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited July 24, 2025) [https://perma.cc/4Q6X-GAZC].

2025 WL 2084238, at *4 n.10.

> **ICE custody except by [§ 1182] parole.** . . . For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated. **The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under [§ 1226(a)] during removal proceeds are aliens admitted to the United States . . . with the exception of those subject to mandatory detention under [§ 1226(c)].**

*Id.* (emphasis in original).

The Lyons Memo predicted that Respondents' changed "position that detention is pursuant to [§ 1225(b)(2)(A)] is likely to be litigated." Since Respondents' change in position, a growing number of courts, including courts in this district, have confronted the threshold statutory interpretation question—whether the text of § 1225 mandates detention of all noncitizens who are "applicants for admission," including those noncitizens who are physically present in the United States and those who were initially detained and released under § 1226(a). *See e.g.*, *Lopez Benitez v. Francis*, No. 25 Civ. 5937, 2025 WL 2371588, at *4 (S.D.N.Y. Aug. 13, 2025).

**B.    Irrespective of the Applicable Detention Provision, Mr. Savane's Re-Detention Does Not Comport with Due Process**

The Court does not need to resolve the statutory interpretation question here. For purposes of this Opinion, the Court assumes, without holding,[10] that Petitioner is an "applicant for admission," who is "seeking admission," and that § 1225's mandatory detention provision is (and was) applicable to him, as Respondents argue. Even assuming that § 1225 applies, as Respondents contend, Petitioner's due process rights were violated because Respondents did not afford Petitioner any process at all before detaining him.[11]

At oral argument, Respondents asserted that Petitioner's initial release on his own

---

[10] "Even if, *arguendo*, ICE had the 'statutory, discretionary authority' to detain [Petitioner] pursuant to § 1225, 'the question is whether, in exercising that authority, ICE is required to adhere to the basic principles of due process. There is no dispute that it is." *Munoz Materano v. Arteta*, No. 25 CIV. 6137, 2025 WL 2630826, at *13 (S.D.N.Y. Sept. 12, 2025) (quoting *Kelly v. Almodovar*, No. 25 Civ. 6448, 2025 WL 2381591 at *4 (S.D.N.Y. Aug. 15, 2025)).

[11] Petitioner has clarified that "should the Court be inclined to order release notwithstanding detention under 1225 . . . the Court could rule simply on due process grounds." Tr. 73:25–74:7. Because the Court holds that Mr. Savane's re-detention without any procedural safeguards violates his due process rights, the Court declines to address whether Mr. Savane is properly subject to mandatory detention under § 1225(b)(2)(A) as a matter of statutory interpretation.

recognizance under § 1226 was a "mistake," Tr: 7:25, and that Petitioner "should have," Tr: 8:1–2, and "could have," Tr: 38:7, been released under § 1182(d)(5)(A). Respondents assert that Petitioner "should have" been initially paroled under § 1182(d)(5)(A) because Petitioner was, and remains, an "applicant for admission" whose detention is mandatory under § 1225(b)(2)(A). Tr: 8:1–2.

Accepting for purposes of this Opinion that, as Respondents argue, § 1225 applies to Petitioner, then Petitioner's initial release into the United States was only legally authorized under § 1182(d)(5)(A) because that provision is the sole statutory authority under which a noncitizen subject to § 1225(b)(2)(A) may be paroled, as Respondents concede. *Biden*, 597 U.S. at 814–15 (Kavanaugh, J., concurring). Respondents' invocation of § 1226 to justify Petitioner's initial release may have been, as Respondents argue, a "mistake,"[12] but Petitioner was still, as a factual matter, released from custody. Accordingly, despite Respondents' initial "mistaken" invocation of § 1226 to justify Petitioner's release, the Court treats Petitioner's initial release as parole under § 1182(d)(5)(A). Tr. 37:17–18 (asserting that Petitioner's initial release "was not" granted as an exercise of the government's parole authority under § 1182(d)(5)(A), "but it could have been"). Respondents' revocation of that parole under § 1182(d)(5)(A) without any process violated Petitioner's due process rights. *Munoz Materano*, 2025 WL 2630826, at *11 ("Even if § 1225 were statutorily applicable to [Petitioner], the Court finds that Respondents violated his Fifth Amendment Due Process rights by moving to dismiss his Section 240 proceedings, revoking his parole, and arresting him pursuant to § 1225, without providing him notice or an opportunity to be heard.").

"Aliens, of course, are entitled to due process." *Zheng v. Mukasey*, 552 F.3d 277, 286 (2d Cir. 2009) (quoting *Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007)). "[T]he Fifth Amendment entitles noncitizens to due process of law," "whether their presence here is lawful, unlawful,

---

[12] Accordingly, any mistaken designation under § 1226 did not alter Petitioner's legal status as an "applicant for admission."

temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Demore*, 538 U.S. at 523; then quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).  The Supreme Court has "repeatedly—and recently—reiterated this principle." *Munoz Materano*, 2025 WL 2630826, at *12 (citing *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025)).

But, applicants for admission, "stand[] on a different footing." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953).  Applicants for admission, including those noncitizens who are paroled into the United States for a limited purpose, are "treated, for constitutional purposes, as if stopped at the border." *Zadvydas*, 533 U.S. at 693; *see United States ex rel. Kordic v. Esperdy*, 386 F.2d 232, 235 (2d Cir. 1967) ("A 'parolee,' even though physically in the country, is not regarded as having 'entered' and thus has not acquired the full protection of the Constitution.").  Accordingly, for an applicant for admission, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Zadvydas*, 533 U.S. at 693; *see also Augustin v. Sava*, 735 F.2d 32, 36 (2d. Cir. 1984) ("Although aliens who petition for admission have no constitutional rights regarding their applications, they do have such statutory rights as Congress grants.").

Here, the Court, as described above, assumes without holding that Petitioner is an "applicant for admission," "seeking admission," who was initially paroled under § 1182(d)(5)(A).  Even so, Respondents violated Petitioner's due process rights because they did not comply with the statutorily required process for revoking that parole.

Section 1182(d)(5)(A)'s implementing regulations require "written notice to the alien" prior to parole revocation.  8 C.F.R. 212.5(e)(2)(i).  There is no indication[13] in the record that Mr. Savane was given any prior notice—much less written notice—that he was going to be arrested following

---

[13] The administrative warrant cannot satisfy 8 C.F.R. 212.5's written notice requirement because that unsigned administrative warrant is not "part of the record" here, Tr. at 8:21–25.  Respondents "do not have access" to that warrant and have declined to make any statements "about what it says or doesn't say."  Tr. at 8:24–25; Tr. 35:2–3.

his court appearance.[14]  *See Orellana v. Francis*, No. 25-CV-4212, 2025 WL 2402780 at *6 (E.D.N.Y. Aug. 19, 2025) ("Respondents have failed to provide credible, direct evidence demonstrating that Petitioner received notice, let alone *adequate* notice." (emphasis in original)).  At oral argument, Respondents were not even aware that 8 C.F.R. 212.5(e)(2)(i) imposed regulatory constraints on the decision to revoke parole.  Tr. at 9:22–11:16.  Respondents could not confirm whether they had complied with 8 C.F.R. 212.5 and could not even identify what that regulation "says or doesn't say." *Id.*

Nor did Respondents here provide any explanation or reasoning for why or how they revoked Petitioner's parole.  In *Mata Velasquez v. Kurzdorfer*, Judge Vilardo wrote a cogent opinion analyzing the requirements for parole revocation under § 1182(d)(5)(A) based on "both common sense and the words of the statute."  2025 WL 1953796 at *10–11.  In that case, Judge Vilardo reasoned that "[t]o revoke parole, . . . a DHS official with authority must decide either that 'the purpose for which parole was authorized' has been 'accomplish[ed]' or that 'neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen]' in the United States." *Id.* at *10 (quoting 8 C.F.R. 212.5(e)(2)(i)).  Accordingly, Judge Vilardo held, "revocation of parole requires a case-by-case assessment to comply with the statute" and "must attend to the reasons an individual [noncitizen] received parole" initially.  *Id.* at *11, (citing *Y-Z-L-H v. Bostock*, No. 3:25-cv-965, 2025 WL 1898025 (D. Or. July 9, 2025); *Doe v. Noem*, 778 F. Supp. 3d 311, 339 (D. Mass. 2025) ("The statute thus seems to contemplate termination of parole on an individual, rather than categorical, basis.")).

There is no indication in the record that Respondents made any assessment—much less an

---

[14] In *Mata Velasquez v. Kurzdorfer*, the Court proceeded to analyze whether "the manner in which the government revoked [Petitioner's parole] violated his statutory rights" because in that case "the government at least ostensibly gave him notice of his parole revocation." No. 25-CV-493, 2025 WL 1953796 at *10 (W.D.N.Y. July 16, 2025).  Here, by contrast, Petitioner was not provided any notice of his parole revocation, "ostensibly" or otherwise.

individualized assessment—before revoking Petitioner's parole.  In fact, just the opposite—Respondents could not confirm whether there was any explanation for revoking Petitioner's parole and were unable to even identify the statutory basis for that revocation.  Tr. at 8:18–19 (AUSA: noting that there is no "documentation in the record" as to the statutory basis for Petitioner's re-detention and speculating that Petitioner was either "detained under 1225" or that Petitioner's parole was revoked "under 1226(b)"); Tr. at 9:5–12 (AUSA:  "I think it's either on the basis of the initial warrant or there was a new warrant, but as I said, I don't have that information so I can't say.").  Therefore, even assuming that Petitioner is an "applicant for admission" subject to § 1225 whose parole was only legally permitted under § 1182(d)(5)(A), Respondents' revocation of his parole violated his statutory due process rights.

The Second Circuit applies the *Mathews v. Eldridge*, 424 U.S. 319 (1976), balancing test when determining the adequacy of process in the context of civil immigration confinement.  *Velasco Lopez*, 978 F.3d at 851; *see also Kelly*, 2025 WL 2381591 at *3 (quoting *Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737, at *3 (S.D.N.Y. June 18, 2025)).  In determining what procedures are required under the Fifth Amendment, the Court must balance:  "(1) the private interest that will be affected by the official action; (2) the value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Velasco Lopez*, 978 F.3d at 851 (quoting *Mathews*, 424 U.S. at 334).

As to the private interest at stake—"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."  *Zadvydas*, 533 U.S. at 690.  "Case after case instructs us that in this country liberty is the norm and detention 'is the carefully limited exception.'"  *Velasco Lopez*, 978 F.3d at 851 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).  A "parolee has relied on at

14

least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," that "liberty [interest] is valuable and must be seen as within the protection of the [Due Process clause]" such that "its termination calls for some orderly process." *Morrissey v. Brewer*, 408 U.S. 471 (1972) ("[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee."). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Velasco Lopez*, 978 F.3d at 850.

Other courts confronting the question of what process is required to revoke parole once granted, even when that revocation is discretionary, have held that a noncitizen has a significant liberty interest in remaining out of custody once parole is granted. *See Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025) ("Those in [Petitioner's] position, a noncitizen granted the liberty of release pending removal proceedings, have due process rights . . . a reliance interest in her continued freedom."); *Guzman v. Andrews*, No. 25-cv-1015, 2025 WL 2617256 at *6 (E.D. Cal. Sept. 9, 2025) ("The Court finds that petitioner has a protected liberty interest in his release."); *Zhu v. Genalo*, No. 1:25-CV-06523, 2025 WL 2452352, at *5 (S.D.N.Y. Aug. 26, 2025) ("Petitioner's liberty interests are implicated by his redetention even if ICE has discretion to revoke his [detention]."); *Pinchi v. Noem*, No. 5:25-cv-5632, 2025 WL 2084921 (N.D. Cal. July 24, 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody.").

The first *Matthews* factor weighs heavily in Petitioner's favor. Mr. Savane invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851. As to the second factor, "the risk of erroneous deprivation of [Petitioner's] liberty

interest is manifest." *Lopez*, 2018 WL 2932726, at *11.  The only process Mr. Savane was afforded was when he was initially released on his own recognizance under § 1226—"mistaken" or otherwise—which, as Petitioner's counsel argued, "necessarily entai[ed] an individualized determination that he posed neither a danger nor a flight risk." Tr. 4:3–19.  That initial individualized determination, that Petitioner was "neither dangerous nor a flight risk is irreconcilable with the decision to re-arrest him, absent changed circumstances." *Lopez*, 2018 WL 2932726, at *11; *Munoz Materano*, 2025 WL 2630826, at *14 (finding a risk of erroneous deprivation where "Respondents provide[d] no indication that an individualized determination was made as to the revocation of [Petitioner's] parole; nor do they articulate, even now, either that the purpose for which [Petitioner's] parole was authorized has been accomplished, nor that neither humanitarian reasons nor public benefit warrants his continued presence in the United States.").  And, as to the third *Matthews* factor, Respondents have a "weighty interest in the efficient administration of the immigrations laws at the border." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982).  But Respondents are not overly burdened by affording Mr. Savane, at minimum, written notice as required under 8 C.F.R. 212.5(e)(2)(i) because Respondents are "required to follow their own regulations." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020).

The Court does not need to determine exactly what "additional or substitute" process Mr. Savane is entitled to prior to the revocation of his parole in this case because Petitioner here was not afforded any process—including the basic written notice requirement already required by regulation. *Kelly*, 2025 WL 2381591 at *3 ("In light of the undisputed facts, there is no doubt that 'Respondents' ongoing detention of [Petitioner] with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights." (quoting *Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737, at *3 (S.D.N.Y. June 18, 2025))).  And no process at all is plainly inadequate.

## V.      CONCLUSION

For the foregoing reasons, Mr. Savane's petition for habeas corpus is GRANTED. Respondents are directed to immediately release Petitioner from custody within one business day of this order and are further directed to certify compliance with the Court's order by a filing on the docket no later than October 1, 2025.  The Clerk of Court is directed to enter judgment for Petitioner and to close this case.

SO ORDERED.

Dated:  September 28, 2025
New York, New York

_____
GREGORY N. WOODS
United States District Judge